## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| |
|---|
| CARLTON WILCOX, |
| *Plaintiff*, |
| v. |
| FISHERS ISLAND FERRY DISTRICT and CIVIL SERVICE EMPLOYEES ASSOCIATION LOCAL 1000, |
| *Defendants*. |

No. 3:20cv678 (MPS)

### RULING ON FISHER ISLAND FERRY DISTRICT'S MOTION TO DISMISS

Plaintiff Carlton Wilcox brings this employment discrimination action against his former employer, Fishers Island Ferry District ("FIFD"), alleging that it is liable for violations of Title VII and the Connecticut Fair Employment Practices Act ("CFEPA") due to sexual orientation discrimination and retaliation.[1] (Counts 1, 3.) In addition, he alleges breach of contract and intentional infliction of emotional distress. (Counts 5, 7.) FIFD moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, and 12(b)(6) for failure to state a claim. ECF No. 31. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

## I       LEGAL STANDARD

Rule 12(b)(2)

"[The] plaintiff bears the burden of showing the court has jurisdiction over the defendant," and the "burden is apportioned based on how far the case has progressed." *Corning Inc. v. Shin Etsu Quartz Products Co.*, 242 F.3d 364, at *2 (2d Cir. 2000). "If the defendant is content to challenge only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a

---

[1] Wilcox also sued his union, Civil Service Employees Association Local 1000. The Court dismissed that defendant in a separate ruling.

Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). The district court has "considerable procedural leeway" in deciding Rule 12(b)(2) motions, and it may accept affidavits if it so chooses. *See Marine Midland Bank v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). "Where ... the district court relies solely on the pleadings and supporting affidavits, the plaintiff need only make a prima facie showing of jurisdiction." *Robinson v. Overseas Military Sales Corp*., 21 F.3d 502, 507 (2d Cir. 1994). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Whitaker v. Am. Telecasting, Inc*., 261 F.3d 196, 208 (2d Cir. 2001).

"In assessing whether personal jurisdiction is authorized, the court must look first to the long-arm statute of the forum state. If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process." *Id.* (internal citations and quotation marks omitted).

<u>Rule 12(b)(6)</u>

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id*., and "must draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However,

2

"threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014).  The court may consider any documents attached to, incorporated in by reference, or otherwise heavily relied upon in the complaint when deciding the motion. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal citations and quotation marks omitted)).[2]

## II.    DISCUSSION

### A.    Personal Jurisdiction

FIFD argues that the complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.  FIFD, which provides ferry service across Long Island Sound from New London, Connecticut, to Fishers Island, New York, was created in 1947 by an act of the New York State Legislature, Chapter 699 of the Laws of 1947, known as the Ferry District Enabling Act. ECF No. 31-2 at 10.  The operative complaint alleges that FIFD is "a public corporation under New York General Construction Law … established and incorporated as such by the State of New York." ECF No. 26 at ¶ 2.  According to FIFD, however, it is a New York municipal entity, and therefore, Connecticut's long-arm statute for foreign corporations, Conn. Gen. Stat. § 33-929(f), does not provide for the exercise of personal jurisdiction over it.  ECF No. 31-1 at 14.

Conn. Gen. Stat. § 33-929(f) provides, in pertinent part:

---

[2] I do not address the standard under Rule 12(b)(1) because, as discussed below, FIFD's arguments do not implicate the Court's subject matter jurisdiction.

Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: . . . (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

In support of its argument that a municipality of another state is not a foreign corporation for purposes of § 33-929, FIFD points to *Reale v. State*, 192 Conn. App. 759 (2019). The plaintiff in *Reale* brought suit in Connecticut against the Town of Coventry, Rhode Island. The Appellate Court determined that personal jurisdiction was lacking because the Town was not a foreign corporation. In so concluding, the court noted that the definition of "foreign corporation" applicable to § 33-929(f), Conn Gen. Stat. § 33-602(18), did not include towns, cities, or boroughs, and that another definition of "corporation," contained in § 33-1002(8), expressly excludes "towns, cities, boroughs or any municipal corporation or department thereof." *Reale*, 192 Conn. App. at 767. From this, the court concluded that the defendant town was not a foreign corporation under § 33-929(f).[3]

---

[3] The Connecticut Supreme Court has not weighed in on this issue, and I find *Reale's* reasoning unpersuasive to the extent it relied on definitions not applicable to the long arm statute. The relevant definition is the definition of "foreign corporation" found in § 33-602, *i.e.*, § 33-602(18), because that is the definition that applies to § 33-929. That definition states simply that a "foreign corporation" is "a corporation incorporated under a law other than the law of this state." § 33-602(18). As will be shown, FIFD satisfies that definition. And that definition is not further elucidated by the definition of "corporation" in § 33-602(6) as "a stock corporation, which is *not a foreign corporation*, incorporated under the laws of this state …." Emphasis added. The other definitions of "foreign corporation" and "corporation" relied on in *Reale*, by their terms, do not apply to § 33-929. *See* Conn. Gen. Stat. § 33-1002 (setting forth definitions "as used in the Nonstock Corporation Act, sections 33-1000 to 33-1290). Finally, even the definition of "corporation" in § 33-1002 that the *Reale* court cited because it includes the language excluding municipalities makes clear that it does not apply to foreign corporations. Conn. Gen. Stat. § 33-1002(8).

Wilcox responds that FIFD's reliance on *Reale* is misplaced. Section 33-929(f) reaches FIFD, Wilcox argues, because it is a district corporation created by the State of New York and under New York law, a district corporation is considered to be a corporation. I agree with Wilcox. New York law defines a "district corporation" as a type of "public corporation," distinguishes a "district corporation" from a "municipal corporation" (a term that "includes a county, city, town, village and school district", N.Y. Gen. Constr. Law § 66(2)), and describes a "district corporation" in terms that fit with the factual allegations in the amended complaint describing FIFD. *Compare* N.Y. Gen. Constr. Law § 66(1), (3) (defining a "public corporation" to include a "district corporation" and defining a "district corporation" to include "any territorial division of the state, *other than a municipal corporation*, … established by law which possesses the power to contract indebtedness and levy taxes or benefit assessments upon real estate or to require the levy of such taxes or assessments, whether or not such territorial division is expressly declared to be a body corporate and politic by the statute creating or authorizing the creation of such territorial division." (emphasis added)) *with* ECF No. 26 (alleging that FIFD is a public corporation under New York General Construction Law §§ 65(b)(2) and 66(3)). FIFD fails to address these provisions of New York law, which, taken together with Wilcox's allegations, are sufficient at this stage of the proceedings to show that FIFD is a "foreign corporation," i.e., "a corporation incorporated under a law other than the law of this state," for purposes of Connecticut's long-arm statute. Because Wilcox has made a prima facie showing that Connecticut's long-arm statute authorizes the exercise of jurisdiction over FIFD, the motion to dismiss for lack of personal jurisdiction is denied.

B.   CFEPA claims (counts 1, 3)

FIFD next moves to dismiss Wilcox's CFEPA claims under Conn. Gen. Stat. §§ 46a-81c and 46a-60(b)(4). It argues that these statutes require that a plaintiff bring a claim against an

"employer" and that, as a political subdivision of the State of New York, it is not an employer for

purposes of CFEPA.[4]  ECF No. 31-1 at 6.

> Conn. Gen. Stat. § 46a-81c provides in relevant part:
>
> It shall be a discriminatory practice in violation of this section: (1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's sexual orientation …
>
> Conn. Gen. Stat. § 46a-60(b)(4) provides:
>
> (b) It shall be a discriminatory practice in violation of this section: …
> (4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84;….

The term "employer" as used in CFEPA is defined to include "the state and all political

subdivisions thereof and means any person or employer with three or more persons in such person's

or employer's employ."  Conn. Gen. Stat. § 46a-51(10).  In turn, "person" is defined as "one or

more individuals, partnerships, associations, corporations, limited liability companies, legal

representatives, trustees, trustees in bankruptcy, receivers and the state and all political

subdivisions and agencies thereof." Conn. Gen. Stat. § 46a-51(14).  As indicated, FIFD maintains

---

[4] In making this argument, FIFD conflates this Court's subject matter jurisdiction with the merits of the plaintiff's claim, that is, whether the plaintiff can prove that the statute at issue applies to the defendant.  *See* ECF No. 31-1 at 8. "Subject-matter jurisdiction . . . refers to a tribunal's power to hear a case. It presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 253 (2010) (citations and internal quotation marks omitted).  "The merits of the case include any issue affecting whether particular plaintiffs qualify for relief under statutory frameworks that courts generally have the power, or jurisdiction, to manage.  [A]ny inquiry into the reach of a statute . . . is a merits question." *Donatello v. Cty. of Niagara*, No. 15-CV-39V, 2016 WL 3090552, at *6 (W.D.N.Y. June 2, 2016).  Here, where FIFD asserts that it does not fall within the relevant statute, the proper rubric for evaluation is a merits-based assessment under Rule 12(b)(6).

it is a "political subdivision of the State of New York," and that the definition of employer under CFEPA includes political subdivisions of Connecticut but not those of other states.   ECF No. 31-1 at 7.

Wilcox responds that FIFD's argument misses the mark because while foreign political subdivisions are not included in the definition of employer, the definition of employer under CFEPA does include a "corporation[]," which plaintiff alleges FIFD is.   I agree with Wilcox. Nothing in the statute precludes coverage of an out-of-state political subdivision that otherwise falls within the statute's coverage.   In other words, although FIFD is a political subdivision of New York, rather than Connecticut, the facts alleged in the amended complaint show that it also is a "corporation" and thus a "person" under the statute.   Moreover, the statute does not qualify the type of "corporation" it applies to, and therefore FIFD's status as a "public corporation" brings it within the ambit of the statute.   The motion to dismiss the CFEPA claims is denied.

C.    Title VII Claim (Count 3)

FIFD moves to dismiss Wilcox's Title VII claim for failure to exhaust because he failed to obtain a right-to-sue letter from the EEOC.   ECF No. 31-1 at 8.

A plaintiff bringing a Title VII claim in federal court must first exhaust his or her administrative remedies by presenting the claims to the EEOC. *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) ("[E]xhaustion of administrative remedies through the EEOC stands as 'an essential element of Title VII's statutory scheme[.]'") (quoting *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)).   "An employee ... may bring a Title VII claim only if she has first filed a timely charge with the EEOC" and "must obtain a right-to-sue letter before bringing suit—and a court will typically insist on satisfaction of that condition." *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 487 (2015) (internal citations omitted).

In response to FIFD's argument, Wilcox has produced a right-to-sue letter that he received after the operative complaint was filed. ECF No. 37-4 at 2. He explains that the Title VII claim was added later after the United States Supreme Court decided *Bostock v. Clayton County*, ___ U.S.___, 140 S. Ct. 1731 (2020), which recognized sexual orientation as a protected status under Title VII.

Although the receipt of a notice of right-to-sue is ordinarily a condition precedent to the initiation of litigation, courts have recognized that there may be equitable reasons for not dismissing where the plaintiff receives the right to sue letter after commencement of the action but while the action is still pending. *See Benzo v. New York State Div. of Human Rights*, No. 95 CIV. 5362 (LAP), 1997 WL 37961, at *9 (S.D.N.Y. Jan. 31, 1997), *aff'd*, 141 F.3d 1151 (2d Cir. 1998). *See also Theophilous v. Bridgeport Mental Health Ctr.*, No. 3:18CV2151(VAB), 2020 WL 4449949, at *4 n. 4 (D. Conn. Aug. 2, 2020) (citing cases). FIFD does not address the issue in its reply brief. ECF No. 42. Under the circumstances, I find that Wilcox's subsequent receipt of the right-to-sue letter has "cured any defect caused by the premature filing of [his] claim." *Evancho v. Key Lincoln Mercury, Inc*., No. 3:03CV1128(EBB), 2005 WL 8167265, at *5 (D. Conn. Apr. 26, 2005). The motion to dismiss plaintiff's Title VII claim is denied.

D.     <u>Breach of Contract (Count 5)</u>

FIFD moves to dismiss Wilcox's claim that FIFD breached the collective bargaining agreement ("CBA") when it discharged him without providing any reasons or affording him a meaningful opportunity to respond or review the evidence. ECF No. 26 at ¶ 104. FIFD argues that the breach of contract claim fails[5] because the CBA expressly provides that any challenge to

---

[5] Although FIFD argues that the Court lacks subject matter jurisdiction over the plaintiff's breach of contract claim, ECF No. 31-1 at 8, I construe the motion to dismiss as seeking dismissal pursuant to Rule 12(b)(6) rather than under Rule 12(b)(1).

the decision to terminate employment must be brought in an Article 78 action under New York law.[6] ECF No. 31-1 at 9-10.

Article 11 of the CBA provides :

An employee not entitled to a hearing[7] pursuant to Civil Service Law section 75 and who has been subjected to formal disciplinary action may request a meeting with the Board or designee, to be held within 30 calendar days of the request, to discuss the reason(s) for that action and request reconsideration. The Board's or designee's decision will be final and non-grievable, subject to the employee's right of appeal it pursuant to CPLR Article 78.

Wilcox argues that the terms of Article 11 do not confine his remedy to an Article 78 proceeding. He argues that the use of the word "may" in the first sentence quoted above means that "an alternative means of adjudicating a disciplinary dispute may be pursued." ECF No. 37 at 16-17. I disagree.

Wilcox's argument finds no support in the language of the CBA, which is governed by New York law. ECF No. 31-2, Article 12. Under New York law, "[w]hen interpreting a contract, [the Court's] 'primary objective is to give effect to the intent of the parties as revealed by the language of their agreement.'" *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 113–14 (2d Cir. 2014) (ellipsis omitted) (quoting *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000)). "The words and phrases in a contract should be given their plain meaning, and the contract

---

[6] "[I]n order to provide an expeditious and essentially uniform procedure for judicial review of action (or inaction) by agencies and officers of state and local government, New York created a special, quasi-judicial proceeding under article 78 of its Civil Practice Law and Rules. Article 78 proceedings are brought in New York Supreme Court and are subject to special rules of evidence and pleading as well as a four-month statute of limitations." *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996) (internal quotation marks, alterations, and citations omitted).

[7] Wilcox was hired in 2015 and terminated in 2019. ECF No. 26 at ¶¶ 8, 74. Because he worked for FIFD for less than five years, Wilcox was not entitled to a hearing under Civil Service Law Section 75. *See* N.Y. Civ. Serv. § 75(1)(c).

should be construed so as to give full meaning and effect to all of its provisions." *Id.* at 114 (brackets omitted) (quoting *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012)). Article 11 is intended to afford a remedy to an employee who has been disciplined but, because of his limited tenure, has no right to a hearing under New York's civil service law; but it specifies the limits of that remedy, stating that the Board's decision will be final and non-grievable, subject only to an employee's right to bring an Article 78 proceeding. Nothing in Article 11 or in any other provision of the CBA suggests that such an employee has any other remedy to challenge a disciplinary action against him. In any event, Wilcox cannot proceed outside the parameters of Article 11, because his breach of contract claim is premised on Article 11. ECF No. 26 at ¶ 100 (breach of contract claim alleging that "[t]he CBA, in Article 11, mandates that FIFD provide reasons for its disciplinary action and contemplates a meaningful exchange with the employee about said action"); ¶ 104 ("FIFD breached its contractual agreement with the Plaintiff when it discharged him from employment without citing a reason for the same and denied him a meaningful opportunity to respond to the Board's decision and/or to review evidence in support of the decision."). Wilcox cannot avoid the restrictions set forth in the very provision of the contract he invokes to support his claim.[8]

Wilcox also argues that he may sue the defendant in breach of contract because the union, CSEA, failed to represent him. ECF No. 37 at 15. He cites case law holding that an employee may proceed directly against the employer when the union fails in its duty of fair representation.

---

[8] Application of the law governing New York's political subdivisions yields the same result. Under New York law, any decision of FIFD, a political subdivision of the state, to discharge an employee must be initially challenged in an Article 78 proceeding. *See Kane v. City of Ithaca*, 3:18-CV-0074 (DEP), 2018 WL 3730172 *7 (N.D.N.Y. Aug. 6, 2018)(citing cases). *See also Ingrassia v. Cty. of Sullivan, New York,* 262 F. Supp. 2d 116, 121 (S.D.N.Y. 2003) ("the gravamen of plaintiff's Complaint is a challenge of defendant's decision to terminate her employment. As a result, plaintiff's claims should have been presented first by way of an article 78 proceeding.")

*See* ECF No. 37 at 16 (citing cases).  That proposition is correct as far it goes.  But the issue here is not who can bring suit but whether Wilcox is bound by the restrictions in the provision of the CBA he has invoked to support his claim.  Because those restrictions require him to bring any challenge to his termination in an Article 78 proceeding, his breach of contract claim must be dismissed even if the CSEA failed to represent him properly.  The motion to dismiss the breach of contract claim is granted.

       E.      <u>Intentional Infliction of Emotional Distress (Count 7)</u>

FIFD moves to dismiss the plaintiff's intentional infliction of emotional distress claim on the grounds that such a claim against a municipal entity is barred under New York law.  Wilcox does not dispute this proposition but argues that under a conflict of laws analysis, Connecticut law governs. In its reply brief, FIFD challenges Wilcox's conflict of law argument and asserts that even if Connecticut law applies, the claim is not tenable against a foreign political subdivision. The court need not wade into this thicket because even if Connecticut law governs, the alleged conduct does not satisfy the element of extreme and outrageous conduct required to  support a cause of action for intentional infliction of emotional distress.[9]

> In order for the plaintiff to prevail in a case for liability under ... [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury. . . .

> Liability  for  intentional  infliction  of  emotional  distress  requires  conduct  that

---

[9] Although FIFD did not make this argument, its co-defendant, Civil Service Employees Association Local 1000 ("CSEA") did, and Wilcox responded to it, in connection with CSEA's motion to dismiss.  *See* ECF No. 30-12 at 26-27; ECF No. 38 at 25- 26.

exceeds all bounds usually tolerated by decent society.... Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' .... Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

*Appleton v. Bd. Of Educ. Of Town of Stonington*, 254 Conn. 205, 210–11 (2000) (internal quotation marks and citations omitted). *See Stein v. Allen*, No. FSTCV176033418S, 2018 WL 4038364, at *3 (Conn. Super. Ct. Aug. 2, 2018) (noting that the court has a "gatekeeper function" with respect to allegations of intentional infliction of emotional distress).

The defendant's conduct in this case fails to meet "this high threshold." *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 527 (2012)(citing cases); *see also Sacco v. Paradigm New Haven Health Care, LLC*, 2013 WL 2321709 *2 (D. Conn. May 28, 2013)("Connecticut courts have narrowly defined the boundaries of extreme and outrageous conduct."). Wilcox alleges he was subjected to harassment in the form of obnoxious behavior and comments related to his sexual orientation, including that a co-worker called him a "faggot," Senior Captain John Morgan hit his parked car in the parking lot and made overtures to convert him from homosexual to heterosexual, Operations Manager Burns engaged him in an "uncomfortable discussion about homosexuality," the partner of a co-worker propositioned him for a sexual encounter, and co-workers and supervisors would joke that a "fairy" wand would be cast over him and urged him to dance "in accordance with the wand." ECF No. 26 at ¶ 47. Wilcox was told that FIFD would conduct an investigation and that corrective action and measures would be taken. *Id.* at ¶ 48. But no corrective action was taken to address his concerns. *Id.* at ¶ 49.

A supervisor initiated a conversation with Wilcox regarding an opening for an agent at the

Fishers Island Port. *Id*. at ¶ 52. After Wilcox expressed interest in the position, Burns and another manager laughed, told him that they had been joking about the opportunity and were only teasing him. *Id*. Subsequently, Wilcox had discussions with FIFD Director Cook about the position. *Id*. at ¶ 53. Cook suggested that the availability of the position was dependent upon Wilcox's accepting compensatory terms and conditions inferior to those of similarly situated employees. *Id*.

At a meeting, Cook confirmed that Mr. Wilcox would be treated disparately in terms of commuter pay and title. *Id*. at ¶ 54  Wilcox complained that Cook's treatment of him was unfair. *Id*. Cook offered one-way commuter pay, which was still a lesser benefit than that offered to heterosexual employees. *Id*. He still withheld the promotional title. *Id*. Wilcox subsequently overheard Cook tell another employee that he wanted Wilcox to "feel the pain." *Id*. at ¶ 55. Cook told another employee that he was homophobic and that this animus motivated decisions with respect to Wilcox. *Id*. at ¶ 56. Wilcox complained about the handling of his application for the senior freight position and the discriminatory/disparate treatment. *Id*. at ¶ 57. He wrote a letter alleging that he had been discriminated against on the basis of his sexual orientation. *Id*. at ¶ 61. He also sought accommodation of his disability, Crohn's disease. *Id*. Cook placed Wilcox on leave pending a disciplinary investigation but did not identify any misconduct, rule and/or policy violation by Wilcox. *Id*. at ¶ 62. While he was suspended, FIFD corresponded with him via hand-delivery from Burns, a practice Wilcox asked FIFD to stop because it caused him fear and anxiety. *Id*. at ¶ 106. Wilcox was notified that after an investigation, FIFD determined that Wilcox's claims of harassment and discrimination claims were unsubstantiated. *Id*. at ¶ 68.

Wilcox alleges that FIFD failed to conduct a genuine investigation of his allegation in order to conceal the actions of its employees. *Id*. at ¶ 69. For example, the initial investigation was conducted by one of the managers Wilcox alleges was a perpetrator of the harassment. *Id*.

Burns misrepresented the character of the meeting at which he was terminated. *Id*. at 107. On January 16, 2018, Burns emailed Wilcox informing him of a "due diligence meeting" scheduled for January 18, 2019 and made no reference to discipline, termination and/or misconduct. It was communicated to the Plaintiff that the purpose of the meeting was to facilitate Wilcox's return to work. *Id*. at ¶ 70. On January 17, 2019, Burns emailed Wilcox that the purpose of the meeting had changed to the FIFD's intention to terminate his employment. *Id*. at ¶ 71. The email provided no reason and/or basis for FIFD's intention to fire Wilcox. Burns suggested that Wilcox should respond to the Board's decision, but again provided no specific allegations of misconduct upon which to respond. *Id*. Wilcox emailed Burns asking for the specific basis for the decision to terminate his employment, but Burns did not provide any information. *Id*. at ¶ 72.

Wilcox attended the January 18, 2019, meeting and indicated that he had always performed well in his position, was a good employee and should remain employed. *Id*. at ¶ 73. On January 28, 2019, FIFD terminated his employment without providing a reason. *Id*. at ¶ 74. When Wilcox petitioned FIFD for reconsideration of the decision, FIFD scheduled and later cancelled a meeting. *Id*. at ¶ 77. FIFD rescheduled the meeting again without consulting Wilcox. *Id*. at ¶ 81. The meeting finally took place on April 4, 2019 on Fishers Island. *Id*. at ¶ 86.

These allegations do not plausibly allege a claim for intentional infliction of emotional distress under Connecticut law. *See Voccola v. Rooney*, 136 F. Supp. 3d 197, 211 (D. Conn. 2015) ("[D]iscrimination is not per se extreme and outrageous."). FIFD's alleged conduct was no more extreme than the conduct Connecticut courts have found to be insufficient to support a claim for intentional infliction of emotional distress in the employment context. *Lute v. Dominion Nuclear Connecticut, Inc.*, No. 3:12CV1412, 2015 WL 1456769, at *17 (D. Conn. Mar. 30, 2015) (collecting cases). *See Gillians v. Vivanco–Small*, 128 Conn. App. 207, 213 (2011) (allegations

14

that defendant co-workers conspired to create hostile work environment, falsely accused plaintiff of racial and sexual bias, and gave plaintiff negative performance evaluations were insufficient for claim of intentional infliction of emotional distress); *Tracy v. New Milford Pub. Sch.,* 101 Conn. App. 560, 567–68 (2007) (allegations of defendant's harassment, intimidation, defamation, and discipline of plaintiff - without conducting a proper investigation - do not rise to the of extreme and outrageous conduct); *Dollard v. Bd. of Educ. of Town of Orange*, 63 Conn. App. 550, 552–53 (2001) (allegations that defendant engaged in a concerted plan to force plaintiff to resign "or to become so distraught that they would have a colorable basis for terminating her employment" by "hypercritically examining every small detail of her professional and personal conduct," transferring her to another school and then secretly hiring a replacement, and publicly admonishing her were insufficient for claim of intentional infliction of emotional distress).  FIFD's alleged conduct does not rise to the level of atrocious, intolerable conduct exceeding all possible bounds of decency.  The motion to dismiss the claim for intentional infliction of emotional distress is granted.

## III.    CONCLUSION

For these reasons, FIFD's motion to dismiss (ECF No. 31) is granted as to count 5 (breach of contract) and count 7 (intentional infliction of emotional distress) and denied as to count 1 (CFEPA) and count 3 (Title VII).

IT IS SO ORDERED.


_____/s/_____
Michael P. Shea, U.S.D.J.


Dated: Hartford, Connecticut
        March 2, 2021